UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CARLOS N.,                                          :
            Plaintiff,                              :
                                                    :
      v.                                            :        C.A. No. 20-398-MSM-PAS
                                                    :
KILOLO KIJAKAZI,                                    :
Acting Commissioner of Social Security,             :
            Defendant.                              :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On April 30, 2015, his alleged amended onset date, Plaintiff Carlos N., who had been

living in California, stopped working because of complications (including pain) caused by

chronic kidney disease ("CKD"). From the alleged amended onset date until May 24, 2016,

when his right kidney was removed ("nephrectomy"), Plaintiff endured four surgeries and two

invasive procedures, culminating in the nephrectomy. Following the nephrectomy, Plaintiff left

California, ultimately moving to Rhode Island in or about July 2016, where he was homeless and

experienced pain from kidney stones forming in his remaining left kidney, as well as right flank

and back pain seemingly secondary to the nephrectomy. Plaintiff alleges that this pain was so

severe that he continued to use a prescribed cane, was intermittently prescribed narcotics and

was unable to continue with physical therapy, and his "lower lumbar segments" were found on

assessment to be "hypermobile w/ pain." Tr. 925. Plaintiff's principal treating nephrologist (Dr.

Michael Monsour) opined that this pain was serious enough to cause a moderately severe

reduction of Plaintiff's ability to concentrate in a work setting, while the treating pain specialist

(Dr. Arnold Rosenbaum) opined that the pain limited Plaintiff's ability to lift, sit or walk and

would cause him to take unscheduled breaks and miss two days of work per month. However,

for the first year after the nephrectomy, Plaintiff endured only one invasive procedure and otherwise was not hospitalized due to complications of CKD.

On September 9, 2015, while he was still in California, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. After a lengthy and complicated administrative journey, a Rhode Island-based administrative law judge ("ALJ") ultimately found that, during the period from April 30, 2015, until June 1, 2017, when Plaintiff's remaining kidney first required hospitalization (for an obstructing stone), Plaintiff retained the RFC[1] to perform light work with additional physical and mental limitations. After that, the ALJ found that Plaintiff was disabled.

Plaintiff has challenged the ALJ's conclusion that he was not disabled during the period from April 30, 2015, through June 1, 2017, in a Motion for Reversal of the Unfavorable Portion of the Partially Favorable Decision of the Commissioner. ECF No. 14. He contends that the ALJ's determination is fatally flawed because he lacked a medical opinion focused on Plaintiff's complicated overall medical situation, because he improperly afforded more weight to the flawed administrative findings of a non-examining physician on reconsideration and little or none to those of the treating experts who opined regarding the source and limiting effect of pain, and because he relied on an unsupported adverse "credibility" determination resulting in the rejection both of Plaintiff's subjective statements about pain and of the testimony of Plaintiff's case manager (Ms. McKayla Keeble) about her observations of the impact of pain. Id. The Commissioner has defended the ALJ's approach in a counter Motion to Affirm. ECF No. 17.

---

[1] "RFC" means residual functional capacity, which is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

Both motions have been referred to me for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    <u>Background</u>

This case features a massive record (2,375 pages); convoluted administrative travel (including the interruption of the development of the administrative record by Plaintiff's move from California to Rhode Island, and the do-over of the ALJ phase due to a sweeping remand order by the Appeals Council); three ALJ hearings; and, arcing over all, the adjudicative challenge of how to assess limitations caused by pain that seems to wax and wane and that treating sources largely accept as real yet that lacks a crisp medical finding of etiology. Understandably, in light of this complexity, the ALJ struggled with how to approach the case. Ultimately, he concluded that Plaintiff suffered, *inter alia*, from chronic kidney disease, ureter obstruction, the consequences of the nephrectomy, chronic pain syndrome, spine and testicular disorders and depression and anxiety, but that these impairments did not cause disabling symptoms until the disease progressed to the point where Plaintiff was hospitalized for an obstructing stone on June 1, 2017.

### A.    Treatment in California from Alleged Onset until Nephrectomy

The tale begins in April 2015 in California, where Plaintiff, a "younger" (in Social Security parlance) high school graduate, had been doing maintenance and janitorial work. Tr. 125. In 2014, he had been diagnosed with serious kidney issues and a fatty liver and had several surgical procedures but continued working. Tr. 606-27, 755, 774. On April 30, 2015, he stopped work due to "[e]xcruciating pain, complications urinating." Tr. 109. In May 2015, he had a cystoscopic examination requiring local anesthesia. Tr. 654. From June 29, 2015, through the end of 2015, Plaintiff had three surgical procedures requiring general anesthesia due to

3

abnormalities of the right kidney.  Tr. 633, 652, 699.  The available records from 2015 also reflect multiple emergency room visits, right flank pain treated with opioid-based drugs and imaging that confirms multiple stone formations in both kidneys and significant obstruction affecting the right kidney.  E.g., 654, 678-79, 709.  Plaintiff described his pain in November 2015 as "excruciating," with shortness of breath, dizziness and other symptoms caused by prescribed narcotic pain medication and the need to "use a cane for walking due to the pain in my right kidney."  Tr. 524-25.

After the third surgery in December 2015 failed, during the first months of 2016, Plaintiff continued treatment intermittently with opioid medications for ongoing pain and consulted with treating providers about his surgical treatment options for what providers had diagnosed as "severe right hydroenphrosis chronic complicated" and "congenital occlusion of ureteropelvic junction."  Tr. 909, 912, 946-50.  In April 2016, Plaintiff had yet another stent inserted.  Tr. 953. Ultimately, Plaintiff decided that his best course was to have the right kidney entirely removed. The nephrectomy was performed on May 24, 2016.  Tr. 946.

### B.      Disability Proceedings in California

While these events were unfolding, Plaintiff filed his SSI and DIB applications on September 9, 2015.  At the initial phase, Plaintiff had no attorney; the non-examining physician expert appears to have been aware only of one of the 2015/2016 surgeries; he found Plaintiff capable of medium exertional work.  Tr. 188-92, 202.  On reconsideration, Plaintiff had an attorney, but the reconsideration Disability Determination Explanation ("DDE") reflects that the case needed significant further development[2] when a representative from the office of Plaintiff's

---

[2] The DDE on reconsideration indicates that an inquiry had been made about Plaintiff's treatment and symptoms in 2015, but no response had been received; that a mental health consulting examination had been scheduled, but had not been performed; and that there was an unresolved inquiry whether Plaintiff had had a surgery in December 2015 (he had, but records relating to that surgery had not yet been provided).  Tr. 210-12.

attorney advised that he had moved away from California.  Tr. 206-12.  Despite missing

substantial information (including the complete absence of any records reflecting the

nephrectomy), the non-examining expert, Dr. Peter Lee, completed his administrative findings in

June 2016, concluding that Plaintiff could perform light work with additional limitations.  The

mental health non-examining experts found depression and anxiety to be severe but did not

complete a PRT analysis because of "[i]nsufficient [e]vidence."  Tr. 213.

### C.      Treatment in Rhode Island from July 2016 Until June 1, 2017

After a brief hiatus in Virginia, Plaintiff moved to Rhode Island where he remained

homeless from in or about July 2016 until he was approved for housing on August 1, 2018.  Tr.

72.  During the year beginning with the initiation of treatment in Rhode Island until June 1, 2017,

when the ALJ found that Plaintiff had become disabled, Plaintiff received basic medical

treatment at Thundermist Health Center for right-side flank pain, an enlarged testicle, multiple

kidney stones in the left kidney and depression and anxiety; this treatment included intermittent

prescriptions for narcotic pain medication and the ordering of a cane to assist with walking.  E.g.,

Tr. 813-28.  Focused mental health treatment was provided by a psychiatrist, Dr. Sripriya

Srinivasan, and a case manager, Ms. McKayla Keeble, at Community Care Alliance ("CCA");

both saw Plaintiff regularly and performed mental status examinations at each session.  E.g., Tr.

833-80.  Dr. Michael Monsour was the treating nephrologist; he focused on Plaintiff's kidney

function.  The treating urologist was Dr. Steven Colagiovanni, who focused on "congenital

process stone disease," bladder obstruction and dysuria.  Tr. 1390-91.  The total time that

Plaintiff spent with treating providers is substantial – for example, in October 2016 alone,

Plaintiff had at least ten medical appointments.  See ECF No. 14-1 at 8 (listing appointments).

Although Plaintiff was not hospitalized during this period,[3] there is significant evidence of pain.  For example, during an attempt at physical therapy in November 2016, the therapist observed that Plaintiff's "[l]ower lumbar segments are hypermobile w/ pain during assessment," and that Plaintiff was significantly limited in his "ability to sit, walk and navigate stairs."  Tr. 925.  After less than four weeks, further physical therapy was put "on hold" "as pt continues to c/o R flank pain."[4]  Tr. 940.  Mental health providers noted that pain interfered with Plaintiff's ability to engage in treatment.  E.g., Tr. 874 ("struggles with pain everyday"); Tr. 1053 ("significant pain today on his right side, and is presenting as under talkative and irritable as a result").  In January 2017, the psychiatrist, Dr. Srinivasan, opined that Plaintiff might be able to work part time from a mental health perspective, but only "to the extent that his medical illnesses allow him to work comfortably."  Tr. 1030.  Also in January 2017, the nephrologist, Dr. Monsour, opined that CKD was affecting Plaintiff's remaining kidney, but not yet in the range that would cause pain or impact function; nevertheless, Dr. Monsour concluded that Plaintiff's pain was of "such severity as to result in a moderately severe reduction in attention, concentration and productivity in a competitive work setting."  Tr. 1027.  As to the cause of the pain, Dr. Monsour opined that it "may be a residual effect from his nephrectomy"[5] or might be

---

[3] One medical procedure (pyelogram retrograde) was performed during this period (February 2017) at a hospital and required the use of anesthesia.  Tr. 1107-09.  This diagnostic procedure was ordered by Dr. Colagiovanni and does not appear to have involved an overnight stay.

[4] During the July 2017 ALJ hearing, Plaintiff explained the decision of the physical therapist to stop treatment:

> [B]ecause I was having so much pain to where they made a decision to stop because they didn't want to mess with the area around there not exactly knowing if I had something else that was – that was more serious than just a lower back pain.  So they just wanted me to see – keep following my urologist which I – which is exactly what I did.

Tr. 136-37.

[5] Later during the period in issue, other treating sources confirmed Dr. Monsour's conclusion that the 2016 nephrectomy had likely caused abnormalities resulting in pain.  For example, in late 2018, Dr. Earle Assanah opined

caused by the urological issues being followed by the urologist.  Tr. 1028.  Dr. Monsour noted the difficulty of monitoring Plaintiff's nephrolithiasis because of Plaintiff's homelessness.  Tr. 1021.

At the end of this period, in May/June 2017, the urologist, Dr. Colagiovanni, confirmed the diagnosis of kidney stones in the remaining kidney but his notations on the opinion form are otherwise illegible.  Also in May 2017, Nurse Heather Orton of Thundermist stated that she could not assess Plaintiff's functional capacity, but she confirmed that he was suffering from recurrent kidney stones, needed a cane for ambulation and that he had pain though it was "unclear chronic nature of pain."  Tr. 1366-67.  Subsequently, in October 2017, Nurse Orton opined that Plaintiff's chronic right flank pain ("rates 8/10") and his need to use a cane were consistent with his impairments.  Tr. 1378.  This phase of the period in issue – the year in Rhode Island following the nephrectomy during which Plaintiff suffered from pain but was not hospitalized – ended on June 1, 2017, when Plaintiff was hospitalized for a blockage caused by a stone causing intractable pain and nausea.  Tr. 1383-1436.

### D.    Disability Proceedings in Rhode Island – First ALJ Decision

In July 2017, relying on the administrative work done mostly in California, the Rhode Island-based ALJ conducted the second, but first substantive,[6] hearing on Plaintiff's application. Plaintiff described the pain of the many procedures he endured from the passing of kidney stones, which was happening on average once a month.  Tr. 146-49.  His treating case manager

---

that Plaintiff's scrotal and testicular issues (pain, swelling, and serious fluid accumulation) appeared to have been caused by the 2016 nephrectomy.  Tr. 1874.

[6] The first hearing was held in March 2017, when Plaintiff appeared without counsel, answered questions about where he had gotten treatment and obtained a continuance so he could engage an attorney.  Tr. 172-85.  At the second hearing held in July 2017, Plaintiff appeared with his attorney and his case manager (Ms. Keeble); a vocational expert also testified.  Tr. 105-70.

(Ms. Keeble) testified that, during clinical appointments, particularly over the "[s]ix months to a year" preceding the ALJ's hearing, she often observed that Plaintiff was in pain because he had a hard time concentrating – "his pain has taken over and that does play a part in his depression as well." Tr. 155-57.  The vocational expert testified that if Plaintiff's medical conditions would cause him to be absent more than once a month, the jobs identified would all be precluded "after a period of time." Tr. 165.  The ALJ did not call a medical expert.

On October 3, 2017, the ALJ issued his first decision: it finds that only ureteral/pelvic obstruction and CKD (post-nephrectomy) are severe at Step Two; that no Listings are met or equaled at Step Three; and that Plaintiff could perform light work, limited to a low-stress job with a sit/stand option, and postural and environmental limitations.  Tr. 235-47.  In reaching these conclusions, the ALJ substituted his own mental health analysis for the conclusion of the non-examining experts that depression and anxiety were severe but that a consultative examination was needed to assess their functional impact; he dismissed Plaintiff's cane as not clearly medically necessary; and he gave substantial evidentiary weight to Dr. Lee, the non-examining expert who had reviewed a materially incomplete file at the reconsideration phase in California.  Tr. 237-45.  Otherwise, the ALJ afforded the opinions from treating sources less weight, while he rejected the testimony of Ms. Keeble, the case manager, finding that it had limited relevance because she had not "physically examined the claimant or observed the claimant on a daily basis."[7]  Tr. 245.  Based on these conclusions, he determined that Plaintiff was not disabled.  Tr. 247.

---

[7] This "reason" for discounting the Keeble testimony does not make sense.  Ms. Keeble was part of the mental health treating team at CCA.  During her counseling sessions with Plaintiff, she made clinical observations of his mental status, which were the basis for her testimony.  As a mental health provider, she did not perform physical examinations, so the lack of physical examinations has no bearing on her testimony.  Further, her sessions with Plaintiff were weekly or biweekly, not daily.  The lack of daily contact by a treating source is simply not a reason utterly to reject the source's opinion.

E.     **Appeals Council Remand**

A year later, having received additional evidence that it found to be new, material and related to the period in issue, on September 24, 2018, the Appeals Council remanded the case back to the ALJ. Tr. 256-58. The remand order focuses on Plaintiff's worsening kidney pain, including his difficulty in passing stones; Plaintiff's December 2017 hospitalization for newly diagnosed colitis; the ALJ's puzzling mental health analysis, which ignored the non-examining expert's assessment that depression and anxiety were severe but that a consultative examination was necessary; Plaintiff's obesity; and the ALJ's failure to develop the record regarding whether the cane was medically necessary. Tr. 256-57. The Appeals Council, *inter alia*, directed that consulting examinations should be performed regarding mental impairments and to assess what Plaintiff can do despite his impairments (for example, whether the ALJ's finding that Plaintiff could stand and/or walk for six hours a day was supported in light of his use of a prescribed cane). Id.

F.     **Disability Proceedings in Rhode Island – Second ALJ Decision**

In compliance with this directive, the ALJ procured two consultative examination reports and convened a new hearing. Dr. David Stoll's consulting report, signed on March 26, 2019, includes his clinical observations of Plaintiff's pain and chronically ill appearance; he confirmed Plaintiff's difficulties with moving and changing position, as well as his use of the cane. Tr. 1808-11. Dr. Wendy Schwartz's consulting report of March 26, 2019, endorsed diagnoses of depression and anxiety that were causing, *inter alia*, moderate to severe functional limitations in the ability to respond to work pressures but noted Plaintiff's questionable effort undermining the reliability of test scores reflective of low cognitive functioning. Tr. 1845-52.

9

Plaintiff also supplemented the record with two more treating source opinions. First, his new primary care physician (Dr. Timothy Cavanaugh) opined that Plaintiff's "chief disability is his psychiatric illness." Tr. 2028. While Dr. Cavanaugh noted "diffuse pains," he also observed that "[Plaintiff] reports pain and weakness without demonstrable objective weakness and without objective impairment of gait or movement"; Dr. Cavanaugh deferred to the pain management specialist regarding the etiology and impact of the pain. Tr. 2028-29. Second, the treating (since October 2017) pain management specialist (Dr. Arnold Rosenbaum) confirmed that Plaintiff experiences "significant pain" in the lower back and kidney area due to multiple surgeries; that the pain is consistent with his impairments; that Plaintiff is extremely limited by pain in his ability to lift, walk, sit or stand; that the pain persists despite treatment; and that the pain would cause Plaintiff to take four or more unscheduled breaks during the work day and to miss two days of work per month. Tr. 2032-34.

At the ALJ's third hearing (held on May 22, 2019), Plaintiff confirmed that he was first given a cane to use in California in 2014 when he first started having kidney surgeries due to pain related to CKD. Tr. 82-83. He testified that the pain comes from the kidney stones, which is "something that will never stop," as well as from his swollen testicle and from his many medical procedures. Tr. 79, 87-88, 90-91. Regarding depression and anxiety, he explained that, since the nephrectomy, the stones and the narrowing of the urethra are frightening because "any harm to [the remaining] kidney right now is really sensitive, . . . it's just a matter of time until . . . [dialysis] . . . and that drives me crazy." Tr. 79. The ALJ did not call a medical expert.

The ALJ's second decision issued on July 29, 2019. Tr. 15-41. This time, at Step Two, he found that Plaintiff's severe impairments include not only CKD and ureter obstruction, but also chronic pain syndrome, disorders of the spine and testicles, depression, anxiety and

10

substance abuse.[8]  Tr. 18.  At Step Three, the ALJ considered whether Plaintiff met or equaled,

*inter alia*, Listing 6.05 (CKD with impairment of kidney function) and Listing 6.09

(Complications of CKD).[9]  Tr. 20.  For the former, the ALJ performed his own analysis of

laboratory findings, while for the latter, he restricted his analysis to Plaintiff's recent

hospitalizations in Rhode Island, ignoring that, in California in 2015 and 2016, Plaintiff had been

hospitalized for CKD surgery four times in a twelve-month period.  Tr. 20.  For the balance of

the analysis, the ALJ broke the period into two parts: first, he examined the period from onset in

April 2015 until June 1, 2017, when Plaintiff was hospitalized for an obstructing kidney stone;

and second, the period from the June 1, 2017 hospitalization through the date of his decision.  Tr.

22-38.

      For the period in California in 2015 and 2016, the ALJ's decision accurately summarizes

Plaintiff's four surgeries and mentions at least one of the three or more emergency room visits.

However, the decision relies largely on the ALJ's lay medical analysis to assess the resulting

functional limitations, while affording "some weight" to the California-based non-examining

physician (Dr. Lee) who had reviewed a materially incomplete file to find Plaintiff able to

perform light work with additional physical limitations.[10]  Tr. 24-31  Ignoring the four California

surgeries, the ALJ rejected Listing 6.09, which mandates a finding of disability if there are at

---

[8] The ALJ's decision contains no discussion of the foundation for, and no analysis of, the Step Two finding of severe substance abuse.  The parties similarly have ignored it in their briefing of the motions.  Therefore, I too have ignored it.

[9] Listing 6.05 covers chronic kidney disease with impairment of function requiring specific laboratory findings and other specific symptoms.  20 C.F.R. Pt. 404, Subpt. P., App. 1, Part A2, § 6.05.  Listing 6.09 covers complications of chronic kidney disease requiring at least three hospitalizations within a consecutive twelve-month period and occurring at least thirty days apart.  Id. § 6.09.  Each hospitalization must last at least forty-eight hours, including hours in a hospital emergency department immediately before the hospitalization.  Id.

[10] The ALJ also afforded little weight to the California-based non-examining psychologist at the reconsideration phase who had found depression and anxiety to be severe but had declined to opine further based on the insufficiency of the evidence.  Tr. 30.

least three hospitalizations for CKD in a twelve-month period.  Tr. 20.  The ALJ rejected

Plaintiff's testimony about his pain in California and the need for the cane during his time in

California; as support for this adverse credibility finding, he relied on the occasional treating

records between surgical interventions when the pain seemed to abate, as well as on the lack of a

medical basis for the cane identified in the treating record.  Tr. 24-25, 27.

For the period of treatment in Rhode Island, beginning in July 2016 (following the

nephrectomy), until the pattern of hospitalizations resumed on June 1, 2017, the ALJ faced the

challenge of assessing Plaintiff's subjective reports of excruciating pain largely of unknown

etiology without the aid of a unifying review of the record performed by a qualified medical

professional.  While accepting some of the opinions as having some or significant weight, the

ALJ discounted or ignored virtually all of the opinion evidence bearing on pain: e.g., Tr. 27-28

(Dr. Srinivasan's opinion that part-time work possible only if Plaintiff can "work comfortably"

rejected as bearing on ultimate issue); Tr. 29 (Dr. Rosenbaum's opinion that pain is extremely

limiting and consistent with impairments afforded little evidentiary weight because he did not

see Plaintiff until October 2017); id. (Dr. Stoll's observations of seriously limiting pain

discounted because opinion not confirmed by MRI of lumbar spine); Tr. 29-30 (Dr. Monsour's

opinion that pain causes moderately severe reduction in attention and concentration afforded

"little evidentiary weight" because internally inconsistent and not based on objective signs and

laboratory findings).  The ALJ rejected Ms. Keeble's testimony regarding her observations of the

impact of pain as not persuasive because it was "unsubstantiated by the objective findings and

inconsistent with the overall medical evidence of record."[11]  Tr. 30.  Focusing on his lay

---

[11] The Court observes that this basis for rejecting Ms. Keeble's testimony is materially different from the illogical reason the ALJ gave for rejecting the same testimony in his first decision.  See Tr. 245.

assessment of the significance in Plaintiff's circumstances of the lack of serious lumbar spine findings, the stability of Plaintiff's eGFR[12] readings, and the "calculus" and "calculi" observations on X-ray, ultrasound and MRI, the ALJ rejected Plaintiff's testimony about pain during this period for "the reasons explained in this decision."  Tr. 27.

In reliance on this analysis, for both the California period from the alleged date of onset and the Rhode Island period preceding June 1, 2017, the ALJ found that Plaintiff could perform light work with additional limitations and therefore was not disabled; for the period beginning on June 1, 2017, through the date of the decision, the ALJ found that Plaintiff was disabled.  Tr. 22-23, 38-41.  After the Appeals Council denied reviewed, Plaintiff timely challenged the pre-June 1, 2017, portion of the decision by filing this case.

## II.   **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); see also

---

[12] The Commissioner's brief advises that this acronym refers to a measure of kidney function – "estimated glomerula filtration rate."  ECF No. 17 at 10 n.5; see also Tr. 20.

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128-131 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the law was incorrectly applied, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Sacilowski v. Saul, 959 F.3d 431, 433, 440-441 (1st Cir. 2020); Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001).

**III.**   **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 416.905.[13]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 416.920.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 416.920(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 416.920(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 416.920(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. § 416.920(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  20 C.F.R. § 416.920(g).  The claimant bears the burden at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to SSI claims).

### B.     Opinion Evidence

---

[13] The Social Security Administration has promulgated nearly identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986); see also Portillo v. Saul, Civil Action No. 1:19-cv-02453-SKC, 2021 WL 4319456, at *2 n.2 (D. Colo. Sept. 23, 2021) (noting DIB and SSI regulations are "identical and parallel").  For simplicity, I cite only one set of regulations.

Because Plaintiff's application was filed in September 2015, the 2017 amendment that altered how adjudicators must weigh opinion evidence is not applicable.[14]  20 C.F.R. §§ 416.920c, 416.927.  That means that the ALJ was required to afford substantial weight to the opinions, diagnoses and medical evidence of treating physicians unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 416.927.  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  Konuch v. Astrue, C.A. No. 11–193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012), adopted, 2021 WL 4967298 (D.R.I. Oct. 17, 2012); 20 C.F.R. § 416.927(c)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).  The ALJ's decision must articulate the weight given to a medical opinion, providing "good reasons" for the determination.  See Sargent v. Astrue, No. CA 11-220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012), adopted, 2021 WL 5413340 (D.R.I. Nov. 6, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

### C.   Reliance on Experts

An ALJ cannot render a medical opinion in the face of conflicting and inconsistent medical evidence without the assistance of a medical expert.  Santiago v. Sec. of Health &

---

[14] Plaintiff incorrectly critiques the ALJ's reliance on the "old" approach to evaluating opinion evidence.  ECF No. 14-1 at 26.  The ALJ, however, employed the proper approach based on the date Plaintiff's application was filed.  20 C.F.R. § 416.927.  Plaintiff acknowledged his misstep in his reply.  ECF No. 19 at 2.

Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) ("[A]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.").  If the medical evidence is such that a "reasonable mind might accept [it] as adequate to support a conclusion" of disability, the ALJ cannot rest on his untutored lay analysis to interpret it otherwise.  Sherry B. v. Saul, 518 F. Supp. 3d 590, 591 (D.R.I. 2021) (cleaned up).  Relatedly, it is error for an ALJ to deny benefits in reliance on a consulting or a non-examining expert physician or psychologist who, despite expertise, was not privy to parts of the medical record that evidence worsening or that support the claimed limitations.  Padilla v. Barnhart, 186 F. App'x 19, 22-23 (1st Cir. 2006); Virgen C. v. Berryhill, C.A No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018); Cruz v. Astrue, C.A. No. 11-638M, 2013 WL 795063, at *13 (D.R.I. Feb. 12, 2013), adopted, 2013 WL 802986 (D.R.I. Mar. 4, 2013).  In such circumstances, without procuring testimony from a medical expert who has interpreted the entire medical file, the ALJ is substituting his lay judgment for a necessary expert medical opinion; the resulting decision is subject to remand because it is not supported by substantial evidence.  Hall v. Colvin, 18 F. Supp. 3d 144, 152 (D.R.I. 2014).

### D.     Claimant's Subjective Statements

Where an ALJ decides not to fully credit a claimant's subjective statements, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309 (D. Mass. 1998).  A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  However, in the absence of evidence that directly rebuts the claimant's testimony or presents some other reason to question

its credibility, the ALJ must take the claimant's statements as true.  Sacilowski, 959 F.3d at 441;

but see Mills v. Apfel, 244 F.3d 1, 7 (1st Cir. 2001).

> ### E.     Pain

The ALJ must assess the severity of alleged pain by making a credibility determination

regarding the claimant's subjective descriptions of the pain.  Da Rosa v. Sec'y of Health &

Human Servs., 803 F.2d 24, 26 (1st Cir. 1986).  If the ALJ decides that an applicant's testimony

about pain is not credible, he "must make specific findings as to the relevant evidence he

considered in determining to disbelieve the [claimant]."  Id.  Our Circuit has provided seminal

guidance regarding how to assess the degree to which pain causes functional limitations.  See

Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986) (listing what have

come to be referred to as Avery factors); see Henderson v. Saul, Civil Action No. 19-11012-

PBS, 2020 WL 1190821, at *7-8 (D. Mass. Mar. 12, 2020) (failure to address Avery factors in

explaining analysis of claim based on subjective pain is error requiring remand).  Hearing

officers are "not free to discount pain complaints simply because the alleged severity thereof is

not corroborated by objective medical findings."  Carbone v. Sullivan, No. 91-1964, 960 F.2d

143, 1992 WL 75143, at *5 (1st Cir. April 14, 1992) (per curiam).  As further guidance for

adjudicators assessing disability allegations based on the claimant's subjective experience of

pain, the Commissioner implemented 20 C.F.R. § 416.929 and adopted SSR 16-3p, Evaluation

Of Symptoms In Disability Claims, 2017 WL 4790249 (Oct. 25, 2017).

## IV.   Analysis

"[C]ourts should ensure 'a just outcome' in Social Security disability claims."  Mary K v.

Berryhill, 317 F. Supp. 3d 664, 667 (D.R.I. 2018) (quoting Pelletier v. Sec'y of Health, Educ. &

Welfare, 525 F.2d 158, 161 (1st Cir. 1975)).  This principle requires remand for further proceedings in this case.

A.      **California – April 2015 until June 2016**

For the period of treatment from April 2015 until May 2016 in California, the Court's work is not difficult.  To perform both the Step Three examination of Listings 6.05 and 6.09 and to formulate the applicable RFC, the ALJ deployed a seriously flawed approach, relying on the insufficiently supported non-examining opinion of Dr. Lee and on the ALJ's lay interpretation of a complex medical record, including as the foundation for his rejection of Plaintiff's subjective statements about pain.

The first error is the ALJ's reliance on Dr. Lee's administrative findings, which are based on a June 2016 file review at the reconsideration phase.  Although the decision indicates that Dr. Lee's findings were afforded just "some weight," Tr. 28, the ALJ's physical RFC (covering the entire period, both in California and in Rhode Island) largely aligns with Dr. Lee's opinions.

The pertinent DDE expressly describes how woefully incomplete was the record on which Dr. Lee's findings were based.  For example, when work on developing the record stopped (because Plaintiff had moved out of California), the examiner recorded that more information had been requested about CKD treatment and symptoms in 2015, and whether there was a surgery in December 2015, while Dr. Lee found that he could not assess the applicability of Listing 6.09 due to the lack of evidence and made no reference to whether he even considered Listing 6.05.  Tr. 210, 212, 214.  Mindful of these known deficiencies, but aware that Plaintiff had left the state with no new address, the disability examiner advised the "Rep"[15] that "a

---

[15] The Court assumes this refers to someone in the office of the attorney who had been representing Plaintiff.

determination will be made based on evidence in file which would more likely be a denial."  Tr.

210.  The missing material of which Dr. Lee was not aware is even more consequential: without

adequate records regarding the failed surgery in December 2015, Dr. Lee did not know that more

surgery would soon be needed and was totally unaware that, by May 2016, Plaintiff's right

kidney had reached the point where it needed to be[16] and was surgically removed.  In short, any

reliance on Dr. Lee's unsupported administrative findings is error.  The findings do not amount

to "substantial evidence" and therefore cannot support any aspect of the ALJ's findings.  See

Virgen C., 2018 WL 4693954, at *3 (opinion of expert who relied on materially incomplete file

does not amount to substantial evidence); Vay v. Berryhill, C. A. No. 16-460JJM, 2017 WL

6820039, at *6 (D.R.I. Dec. 18, 2017), adopted, 2018 WL 333826 (D.R.I. Jan. 8, 2018) (ALJ

needs medical expertise to make medically complex determination).  Unless the ALJ's findings

for the California period are otherwise buttressed by substantial evidence, this error requires

remand.

The problem is that what remains is the ALJ's lay interpretation of complex (and

inscrutable to the lay reader) laboratory test results, radiograph findings, examination reports and

hospital records.  To focus on just one startling example at Step Three, the ALJ claims to have

considered Listing 6.09, which is met or equaled by three hospitalizations for CKD of forty-eight

hours duration, thirty days apart, in a twelve-month period.  20 C.F.R. Pt. 404, Subpt. P., App. 1,

Part A2, § 6.09.  The record reveals that Plaintiff had at least four potentially qualifying

hospitalizations, in June, August, December 2015, and May 2016, as well as two other invasive

procedures in May 2015 and April 2016 – these surgeries all appear to relate to CKD, all are

---

[16] I use the phrase "needed to be" advisedly – the extent to which Plaintiff had other viable medical options apart
from total removal of the kidney is not clear from the record.  However, there is no suggestion that the decision to
have the kidney removed was against medical advice.

within twelve months, and all are thirty days or more apart; only the duration is difficult to ascertain.  E.g., Tr. 633, 652, 654, 699, 946, 953.  Yet no one – and certainly not a qualified medical expert – has considered whether this sequence meets or is of equal severity to the criteria in Listing 6.09.[17]  Dr. Lee considered Listing 6.09 but, aware that he did not know whether there was another surgery in December 2015, and totally unaware of the procedure in April 2016 and the surgery in May 2016, he opined that he lacked the evidence to make the assessment.  Tr. 214. The ALJ's lay attempt to perform this task himself is hopelessly flawed because he totally ignored these California procedures, relying solely on Rhode Island hospitalizations in the later period.  Relatedly, no qualified expert has ever looked at the laboratory and other treating records from California providers to make a Listing 6.05 determination or an RFC assessment. Nor has any qualified expert considered Plaintiff's subjective statements in the context of the entirety of this complex medical record, encompassing a twelve- to thirteen-month period punctuated by seven invasive procedures painful enough to require anesthesia, prescriptions for narcotic pain medication, but also by periods when Plaintiff seemed to have a respite from pain ("no acute distress").  Nor has any qualified expert opined regarding Plaintiff's ability to work without excessive absence despite these challenges and to perform basic physical and mental functions without excessive distraction and exertional and postural limitations due to pain.

Based on the foregoing, I find that the ALJ's error in not calling a medical expert for the California period of treatment requires remand.  I recommend that the Court direct the ALJ to procure an opinion from a qualified medical expert who has examined the entire record of Plaintiff's treatment in California (supplemented to the extent that any treating records that

---

[17] If Listing 6.09 is met or equaled, Plaintiff must be found to have been disabled during this portion of the period. 20 C.F.R. § 416.920(d).

remain missing and can be procured).  With the medical expert's testimony as a foundation, on remand, the ALJ should reassess Plaintiff's testimony and subjective statements in the context of the totality of the medical treatment during that period; make findings bearing on the <u>Avery</u> pain factors; reassess whether Listings 6.05 or 6.09 were met or equaled; and, if necessary, reassess Plaintiff's RFC during the period, including the degree to which (taking all of Plaintiff's physical and mental symptoms into account), Plaintiff would have been absent from or otherwise unable to work due to the pain, surgeries, medical interventions, side effects of medications and any other medical causes then adversely impacting him.

### B.      Rhode Island – June 2016 to June 1, 2017

Shifting to the year of treatment in Rhode Island from June 2016 until June 2017, involves a more difficult analysis because, apart from the sheer number of medical appointments, this portion of the relevant period is "essentially . . . about pain."  <u>Tegan S. v. Saul</u>, C.A. No. 20-307PAS, 2021 WL 2562426, at *4 (D.R.I. June 23, 2021).  Complicating the work is the confusing and seemingly inconsistent evidence regarding the etiology of the pain.  Yet the ALJ based his findings for this period entirely on his lay analysis – the non-examining expert (Dr. Lee) on whom the ALJ principally relied for his RFC saw none of these records.  Instead of calling a medical expert qualified to examine the relevant evidence, the ALJ performed his own analysis, cherry-picking from a hodgepodge of treating source opinions, resulting in a decision reminiscent of the description that emerged in the parable of the six blind men who set out to describe an elephant.[18]

---

[18] <u>District of Columbia v. Heller</u>, 554 U.S. 570, 652 n.14 (2008) (Stevens, J., dissenting) ("In the parable, each blind man approaches a single elephant; touching a different part of the elephant's body in isolation, each concludes that he has learned its true nature.  One touches the animal's leg, and concludes that the elephant is like a tree; another touches the trunk and decides that the elephant is like a snake; and so on.  Each of them, of course, has fundamentally failed to grasp the nature of the creature.").

For example, the ALJ afforded "significant weight" to the opinion of psychiatrist Dr. Srinivasan, Tr. 27, who opined that Plaintiff may be able to do part-time work, but ignored that Dr. Srinivasan was laser-focused on mental impairments, cabining her opinion as applicable only if and when Plaintiff "starts to feel better," that is, without pain. Tr. 1030. Similarly, the ALJ rejected Dr. Monsour's finding that Plaintiff's pain was likely due to the effects of the nephrectomy or the passage of kidney stones and "would result in a moderately severe reduction in attention, concentration, and productivity in a competitive work setting." Tr. 29-30. As for the pain specialist (Dr. Rosenbaum), the ALJ cabined his finding that his opinion was entitled to significant weight to the post-June 1, 2017, period but used his lay assessment to find it entitled to little weight prior to June 1, 2017. And the ALJ rejected the testimony of Ms. Keeble in reliance on the inaccurate finding that it was "unsubstantiated by objective findings and inconsistent with the overall medical evidence of record." Tr. 30. In fact, Ms. Keeble based her testimony on her treating relationship with Plaintiff, which involved making objective mental status observations of Plaintiff several times a month during the period in issue; her testimony is consistent with the observations of Dr. Srinivasan (with whom she worked), who made objective mental status findings that align with those of Ms. Keeble. Further, this flawed analysis[19] appears to be the ALJ's principal support for the rejection of Plaintiff's subjective statements regarding pain.

The medical record in this case limns an individual suffering from a progressive and extremely serious disease that was causing pain whose etiology was unclear. During this period of treatment, the record reflects that Plaintiff had medical appointments with an array of care

---

[19] The ALJ's basis for the credibility determination for this period of treatment is brief and vague; the decision simply states that Plaintiff's subjective complaints "are not fully supported prior to June 1, 2017, for the reasons explained in this decision." Tr. 27.

23

givers,[20] that the pain waxed and waned, but was accepted by well-qualified treating sources as being, at times, excruciating enough to permit the prescription of powerful pain medications despite obvious concerns by prescribers about their dangers.  That is, the record regarding the degree to which Plaintiff was limited by the symptoms of this disease as it progressed, as well as by related impairments (e.g., testicular disorder, prostrate issues, problems with urination, colitis, depression and anxiety) that also exacerbated over time, is ambiguous and requires the interpretation of raw data and the assessment of subjective statements.[21]  In these circumstances, the law is clear – "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record."  Mary K, 317 F. Supp. 3d at 668 n.5 (quoting Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996)); see Hall, 18 F. Supp. 3d at 152.  An ALJ is particularly unqualified to substitute his own interpretation of raw medical data for the opinions of well-qualified treating sources like Dr. Monsour, Dr. Rosenbaum and Ms. Keeble.  See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  "When an ALJ's findings rest on improper lay judgments regarding matters that are well beyond the ken of common sense, they are not supported by substantial evidence and should not be sustained."  Manuel P. v. Saul, C.A. No. CV 20-234PAS, 2021 WL 949345, at *2 (D.R.I. Mar. 12, 2021).

For the period of treatment in Rhode Island from June 2016 until June 1, 2017, I find that the ALJ needed the assistance of a medical expert to assist him in analyzing the complex array of

---

[20] As an aside, the Court observes that the ALJ did not pause to consider the sheer number of Plaintiff's medical appointments during this period and how the need to leave work early to attend such appointments would impact his ability to sustain work, despite testimony from the vocational expert that "to leave early once a month to go to the doctor's . . . would . . . preclude" the identified jobs "after a period of time."  Tr. 165.  This should be considered on remand.

[21] Because the ALJ has already found the onset date to be June 1, 2017, this analysis is really a determination of what is the correct "established onset date"; therefore, on remand, the ALJ should be guided by SSR 18-01P, Determining the Established Onset Date (EOD) in Disability Claims, 2018 WL 4945639, at *6 (Oct. 2, 2018), which makes clear that the ALJ "may call on the services of" a medical expert in making that determination.

evidence related to Plaintiff's pain (including not just the treating evidence and treating source opinions, but also Plaintiff's subjective statements and the testimony of Ms. Keeble). Similar to my recommendation regarding the treating period in California, I recommend that the Court remand the matter for further proceedings so that the opinion of a qualified medical expert may be procured and used to reassess Plaintiff's testimony and subjective statements in the context of the totality of the medical treatment and medical appointments during this period; to make findings bearing on the Avery pain factors; to reassess whether any Listings were met or equaled; and to reassess Plaintiff's RFC during the Rhode Island treatment period prior to June 1, 2017.

## V.   Conclusion

Based on the foregoing, I recommend that Plaintiff's Motion for Reversal of the Unfavorable Portion of the Partially Favorable Decision of the Commissioner (ECF No. 14) be GRANTED and that Defendant's Motion to Affirm the Acting Commissioner's Decision (ECF No. 17) be DENIED. This matter should be remanded for further proceedings solely regarding the period from alleged onset on April 30, 2015, until June 1, 2017, pursuant to Sentence Four of 42 U.S.C. § 405(g).[22]

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.

---

[22] Mindful of the tortured travel of this matter, I have carefully considered but do not recommend remand for an award of benefits. This is not a case where "the proof of disability is overwhelming or the proof is very strong and there is no contrary evidence." Sacilowki, 959 F.3d at 433 (internal quotation marks omitted). Rather, it is a case with complex and ambiguous (to a lay person) evidence that may or may not yield a finding of disability for some or all of the period in issue once the evidence of record is properly interpreted by a qualified medical expert.

See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v.

Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 10, 2021